[No. 16589.    Department One.    November 19, 1921.]

JOHN DAVIS & COMPANY, *Appellant,* v. A. L. AABLING et al., *Respondents.*[1]

BROKERS (14)—COMPENSATION—PERFORMANCE OF CONTRACT WITHIN TIME SPECIFIED. Where a broker is employed to procure a lease of certain land on or before a certain date, and is later refused an extension of the time limit in the proposal of employment, he is not entitled to commissions if the lease is not consummated until a month and a half later than the time limit and on terms differing from the proposition.

Appeal from a judgment of the superior court for King county, French, J., entered February 21, 1921, upon findings in favor of the defendants, dismissing an action to recover a broker's commissions, tried to the court. Affirmed.

[1]Reported in 202 Pac. 2.

*Carkeek, McDonald, Harris & Coryell,* for appellant.

*Bausman, Oldham, Bullitt & Eggerman* and *Walter
L. Nossaman,* for respondents.

MITCHELL, J.—This is an action brought by John
Davis & Company, a corporation, to recover the sum
of $5,000, claimed to be due as commission for securing
a lease of real property for the defendants in accord-
ance with the terms of a written contract. The find-
ings of fact and judgment were against the plaintiff,
which has appealed from a dismissal of the action.

Respondents desired a fifty-year lease of certain real
property in Seattle. Their purpose was to demolish
an old building on it and erect a new one. F. K. Struve,
Mrs. Furth, and John Davis estate (not John Davis
& Company, a corporation); were the owners of the
property. After some preliminary negotiations with
the owners or a portion of them, the respondents A. L.
Aabling and J. T. Hodge, on August 13, 1919, made a
written offer to F. K. Struve to lease the premises for
fifty years, upon specified terms not material here
other than that the "lease shall take effect and full
possession shall be given on October 1, 1919," that
they agreed to erect a new building on the property,
and deposited with Mr. Struve $10,000, to be returned
if the offer was not accepted. Thereafter, upon re-
quest, the respondents signed and delivered their com-
mission contract in writing as follows:

"Seattle, Wash., Aug. 18, 1919.
"Messrs. John Davis & Co.,
"Seattle, Washington.

"Gentlemen:—We are negotiating for a fifty-year
lease on Lots 2, 3 and 6, Block 22, of A. A. Denny's
Third Addition to the city of Seattle in behalf of the
Western Building Company, a corporation about to be
formed.

"If this lease is made along the lines contained in our letter to Mr. F. K. Struve, dated August 13th, 1919, or on a basis satisfactory to all parties, and if the lease is executed on or before October 1st, 1919, we hereby agree to pay you a commission of $5,000, payment to be made when the Western Building Company takes possession of the above described property.

"Yours very truly,

"A. L. Aabling
"P. B. Truax
"J. T. Hodge."

Under the commission contract the appellant, which was engaged in business as real estate agents (and as such generally represented the John Davis estate that owned two-thirds of the stock of John Davis & Company, a corporation), undertook to get the John Davis estate to enter into the lease. The trustees of the John Davis estate requested the appellant to give them its opinion in writing as to the advisability of making the lease. On August 25, 1919, it complied with the request and, in writing, recommended the proposition "to the owners of the property." At a meeting of the trustees of the Davis estate on August 27, 1919, the proposition to lease was duly considered by them, whereupon it was by the trustees "resolved that F. K. Struve be instructed to have a lease prepared according to the terms set forth in the letter of A. L. Aabling and J. T. Hodge, or more favorable terms if they could be. secured." (The letter referred to in the resolution was the one to Mr. Struve containing the original proposition of the respondents, as shown by the minutes of the trustees' meeting as they appeared in connection with the resolution that was adopted). Certainly this action by the Davis estate was not an acceptance of the offer made by the respondents, but only that Mr. Struve be instructed to have a lease prepared according to the offer, *or more favorable terms*

*if they could be secured.* It was, in effect, a commission to him to negotiate with respondents to get more favorable terms if possible.

Accordingly the owners, on August 29, 1919, made a counter proposition in writing containing material modifications and changes over the original offer of the respondents, to the disadvantage of the respondents. Thereafter the trustees of the Davis estate did nothing about the matter until the execution of the lease, other than hold a trustees' meeting on September 10, 1919, for the purpose of determining, with the other owners of the property, an apportionment of the rent under the contemplated lease and that Mr. Struve have the lease drawn showing such apportionment. Nor does it appear that the appellant did anything to consummate the deal after their letter recommending it to the Davis estate. Thereafter negotiations continued by and between Mr. Struve and the respondents which resulted in changes from time to time, so that in spite of the promptness demanded by the respondents, the final terms were not consented to until considerable time after the date fixed in the commission contract in suit. The lease as finally entered into is dated November 10, 1919, and acknowledged by the various parties from time to time thereafter down until the latter part of November, 1919. The lease as signed and delivered is much more favorable to the owners than originally proposed by the respondents, besides necessitating delay in the commencement of the new building much beyond what they had desired and intended. It satisfactorily appears that, shortly before October 1, 1919, the time limit fixed in the commission contract, the appellant, evidently being satisfied the deal could or would not be completed within the time limited in its commission contract, asked and was refused an extension of time for the performance of it.

Considerable discussion has arisen if the. commission contract contemplated the procuring of a lease from all of the owners or simply the binding of the Davis estate. That feature of the controversy it appears to us is immaterial, for it is manifest that, even if confined to only the Davis estate, the commission contract, properly construed, can mean nothing less than the Davis estate should not simply consent to a lease upon the terms proposed, but that it should also. be executed according to those terms, and that on or before October 1, 1919. Terms that were eventually agreeable to the Davis estate were neither consented to, nor was a lease in accordance therewith executed by it, until long after the date limit fixed in the commission contract.

Appellant has sued upon a contract it has not fulfilled. The commission offered was dependent, among other things, upon the execution of a lease on or before October 1, 1919—not on or after November 10, 1919. This provision was vital and important.

Recently, in *Swift v. Starrett, ante* p. 188, 200 Pac. 1108, we said:

"The settled rule of law is as stated in 4 R. C. L. 305: 'To entitle a broker to the payment of his commission it is essential that he prove not only the actual rendition of all the services called for by his contract of employment, but that he complete the performance thereof within the time stipulated or before the expiration of such additional period as may have been granted by the employer in extension of that originally agreed upon'."

It must be admitted that, if respondents had done anything to make it impossible for the appellant to perform within the time limited, a different rule would apply, but nothing in the record called to our attention, or that can be found upon examining it, indicates

any such conduct on the part of the respondents, or either of them. On the contrary, their interests suggested, and, indeed, they requested and demanded, the execution and delivery of the lease and the consequent right of possession of the property promptly, or on or before October 1, 1919. The delay was caused, not by their conduct, but by that of the owners of the property, who were constantly making changes more burdensome to the respondents.

Affirmed.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.