[No. 25546.  Department One.  October 28, 1935.]

FIRST NATIONAL BANK AND TRUST COMPANY OF MINNE-
APOLIS, *as Guardian of the Estate of Anna E. Hill,*
*Incompetent, et al., Appellants,* v. UNITED
STATES TRUST COMPANY, *as Executor,*
*Respondent.*[1]

[1]Reported in 50 P. (2d) 904.

*Evans & McLaren,* for appellants.

*Tanner & Garvin,* for respondent.

MAIN, J.—This action was brought by Anna E. Hill, an incompetent, through the guardian of her estate, to recover upon a claim filed with the defendant, as the executor of the estate of Samuel Hill, deceased, and by it rejected.

In the complaint, there are three causes of action, separately stated. The first is based upon a written contract dated April 8, 1918, the second upon a similar contract dated April 19, 1922, and a supplemental contract dated April 11, 1927. The third was based upon a contract dated July 22, 1922. The trial court gave judgment for the plaintiff on the third cause of action, and denied recovery upon the other two. There being no dispute as to the third cause of action, the plaintiff appealed from that part of the judgment denying recovery upon the first and second causes of action.

The appellant is a banking corporation, with its principal place of business in the city of Minneapolis, Minnesota. The respondent is likewise a corporation, with its principal place of business in the same city.

Nathan B. Hill, a resident of the city of Minneapolis, died prior to the year 1897 and left surviving him, as his only heirs, three children, Samuel Hill, Richard J. Hill and Anna E. Hill. They inherited, in addition to other property, two parcels of property in the city mentioned. March 29, 1909, Samuel Hill conveyed his un-

divided interest in these properties to his brother, Richard J. Hill. November 6, 1913, Anna E. Hill, through her attorney in fact, the Minneapolis Trust Company, conveyed her interest in the properties and took in payment thereof a promissory note, signed by Richard J. Hill, in the sum of $17,500, dated December 13, 1913.

Anna E. Hill was unmarried, and for approximately thirty-five years had been, and at the time of the trial was, in a sanitarium. In the year 1931, the appellant was appointed her guardian because she was incompetent.

The first cause of action, as stated, is based upon the agreement which Samuel Hill signed April 8, 1918. This agreement contains a number of preliminary or whereas clauses in which the facts leading up to the agreement were recited, and is too long to be here set out in full. We shall undertake to abbreviate and set forth the facts as they are stated in that part of the contract which precedes the operative part. They are as follows:

Richard J., Samuel and Anna E. Hill were the heirs at law and next of kin of Nathan B. Hill and inherited from him two certain parcels of real estate situated in the city of Minneapolis, Minnesota (describing them). It was the purpose and desire of Richard J. and Samuel Hill that the former should acquire all the interest formerly owned by his father in the two parcels of property. In order to carry out this plan and purpose, Samuel Hill conveyed his undivided interest in both of the parcels of land to Richard J. Hill on March 29, 1909, and Anna E. Hill conveyed her undivided interest in the same properties to the Hill Holding Company, a corporation, the stock of which was all owned by Richard J. Hill, his wife and children, November 6, 1913.

Richard J. Hill gave to Anna E. Hill, as a consideration for her conveyance, a promissory note in the sum of $17,500, dated December 15, 1913, bearing interest at the rate of five per cent per annum, which note "is now held and owned by said Anna E. Hill." Anna E. Hill, as recited in the agreement, was then unmarried, and Richard J. and Samuel, her brothers, were her only heirs at law, and in case Anna E. Hill should die intestate, the two brothers surviving her would be her sole heirs at law and next of kin, and would inherit the note, together with all other property which she might own at the time of her death.

In order to induce Richard J. Hill to purchase and acquire the interest of his sister in the two parcels of land, Samuel Hill promised and agreed that, in case he, Richard J. Hill, would purchase their sister's interest and give his promissory note therefor in the sum of $17,500, he, Samuel Hill, in case Anna E. Hill should die intestate, leaving him, Samuel Hill, as one of the heirs and next of kin, would release, surrender and convey unto Richard J. Hill all his right, title and interest in and to that part of the estate of his sister represented by the note, and

". . . in case she, the said Annie E. Hill, should survive the said Samuel Hill, then his estate should thereupon assume and pay one-half of said promissory note, to-wit: the sum of Eight Thousand Seven Hundred and Fifty Dollars ($8,750), and interest from the date of said note up to the date of the death of said Samuel Hill, which said claim in said sum should be and become provable against his estate."

Following these facts, as recited, appears the operative part of the contract, which is as follows:

"Now, THEREFORE, in order to protect and indemnify said Richard J. Hill, his heirs, executors or administrators, against the possibility that the said Samuel

Hill may die before the said Annie E. Hill, and in order to carry out and perform the terms and agreements heretofore made by the said Samuel Hill to said Richard J. Hill to induce him to make said purchase and give his said promissory note therefor and complete a family settlement, and in consideration of one dollar paid by said Richard J. Hill to the said Samuel Hill, the receipt whereof is hereby acknowledged, and for other good and valuable considerations so paid and received, the said Samuel Hill does hereby promise and agree to and with the said Richard J. Hill, his heirs, executors or administrators, that in case he shall survive his said sister, Annie E. Hill, and be one of her heirs and next of kin he will immediately upon her death remise, release, assign and surrender, and does hereby remise, release, assign and surrender unto the said Richard J. Hill, his heirs, executors or administrators, all his right, title and interest in and to that part of the estate of said Annie E. Hill represented by said note, and further that in case the said Annie E. Hill shall survive the said Samuel Hill, he, the said Samuel Hill, his heirs, executors, administrators or assigns, will forthwith pay one-half of said note, to-wit: the sum of Eight Thousand Seven Hundred and Fifty Dollars ($8,750) to the said Richard J. Hill, his heirs, executors or administrators, and he, the said Samuel Hill, does hereby specifically promise and agree that this obligation on his part to pay the said . sum as aforesaid, with interest thereon up to the date of his death, shall be a provable claim in the full amount thereof against his estate.

"The plan, purpose and intent of the agreement of the said Samuel Hill with his brother Richard J. Hill and of this agreement is that he, the said Samuel Hill, shall be bound hereby to pay as between him and his brother Richard J. Hill one-half of the sum of Seventeen Thousand Five Hundred Dollars ($17,500) and interest thereon as fully and completely as though this agreement had at the time of said purchase been made and executed, or the said Samuel Hill had, together with the said Richard J. Hill, jointly executed said note."

This agreement was signed, as stated, by Samuel Hill, April 8, 1918. It will be noticed that this was something over four years subsequent to the time that Anna E. Hill had conveyed her interest in the properties to her brother, Richard J. Hill, and taken his note therefor in the sum of $17,500. It appears that the Minneapolis Trust Company, which was the attorney in fact of Anna E. Hill at the time, was not satisfied with the arrangement as it stood prior to the execution of this agreement, and it was at the instigation of the trust company that the agreement was prepared and signed.

The question upon this appeal is whether Anna E. Hill, through her guardian, can maintain an action upon this contract. The general rule is well settled in this state to the effect that, when one person, for a valuable consideration, makes a promise to another to pay the debt of that other to a third person, such third person may maintain an action in his own name upon the promise, and this is true even though the identity of the third person may not be known at the time of the execution of the contract. *Hart v. Bogle,* 88 Wash. 125, 152 Pac. 1010; *Washington Perfection Co. v. Davin,* 138 Wash. 427, 244 Pac. 697. In each of those cases, the previous decisions from this court are cited which support the rule stated.

The question, then, is whether, Samuel Hill having promised, by this agreement, to pay the debt of his brother, Richard J. Hill, represented by this $17,500 note, to the extent of $8,750, there would necessarily be implied a promise in favor of his sister, the payee in the note. There would be no question about there being such a promise in favor of the sister if it were not for the last paragraph in the contract, which provides that it shall be operative as between Samuel Hill and his brother, Richard J. Hill. It is recited in

this connection that the plan, purpose and intendment of the agreement, which undoubtedly refers to the agreement made at the time of the conveyance and the giving of the note, and "this agreement," are that Samuel Hill would pay one-half of the $17,500 and interest thereon as fully and completely as though this agreement had, at the time of the purchase, been made and executed, "or the said Samuel Hill had, together with the said Richard J. Hill, jointly executed said note." Just preceding this paragraph, and in the operative part of the contract, there is the express promise that,

". . . in case the said Annie E. Hill shall sur vive the said Samuel Hill, he, the said Samuel Hill, his heirs, executors, administrators or assigns, will forthwith pay one-half of said note, to-wit: the sum of Eight Thousand Seven Hundred and Fifty Dollars ($8,750) to the said Richard J. Hill, his heirs, executors or administrators, and he, the said Samuel Hill, does hereby specifically promise and agree that this obligation on his part to pay the said sum as aforesaid, with interest thereon up to the date of his death, shall be a provable claim in the full amount thereof against his estate."

As indicated, the last paragraph refers to the agreement or understanding made at the time of the purchase by Richard J. Hill of his sister's interest in the property. That agreement, as recited in the preliminary facts before the operative part of the contract, expressly provided that, in case Anna E. Hill should survive Samuel Hill, then his estate should thereupon assume and pay one-half of the promissory note, to-wit: the sum of $8,750 and interest thereon from the date thereof to the time of the death of Samuel Hill, and that such claim should become payable out of his estate.

It is said, however, that the operative clause

controls over the express promise made in the recitals. The rule is well established that, if the recitals are clear and the operative part is ambiguous, the recitals govern the construction. If the recitals are ambiguous and the operative part is clear, the operative part prevails. If both the recitals and the operative part are clear, but inconsistent with each other, the operative part is to be preferred. *Wilson v. Towers,* 55 F. (2d) 199.

The essential feature of a contract is the promise, and whenever the court can collect from the instrument an agreement to do or not to do a certain thing, it amounts to a covenant, whether it be contained in the recital or in any other part of the instrument. *Hunt v. United Bank & Trust Co.,* 210 Cal. 108, 291 Pac. 184; *Becker v. Kelsey,* 9 N. J. Misc. 1265.

We think it is plain that the agreement referred to in this written contract of April 8, 1918, did not contain any attempted restriction, such as is found in the last paragraph of the contract, seeking to limit its obligation to pay "as between him and his brother, Richard J. Hill." Had Samuel Hill paid over the $8,750 to his brother or to his estate, there would appear to be no question but that Anna E. Hill would have had a right to maintain an action for the money, because it would have, of necessity, been paid for the purpose of extinguishing the note to the amount of the payment.

In *Tacoma v. Young,* 170 Wash. 385, 16 P. (2d) 617, it is said:

"The rule is that, where money or property is delivered to a person, to be paid by him or to be delivered over for the benefit of a third person, a trust will arise from the transaction in favor of the beneficiary by operation of law, even though there be no express agreement to that effect, and such third person may

maintain an action therefor in his own name. [Citing authorities.]''

When Samuel Hill signed the agreement by which he assumed and agreed to pay, as between him and his brother, one-half of the $17,500 note, he, in legal effect, became the principal to that amount, and his brother the surety. The situation is analogous to that where a purchaser of mortgaged property assumes payment of the mortgage, and in such a case he becomes the principal debtor and the mortgagor the surety only. *First State Bank of Binford v. Arneson,* 109 Wash. 346, 186 Pac. 889; *Keller v. Ashford,* 133 U. S. 610, 10 S. Ct. 494. And if that be the relation, there is no question but that the appellant had the right to maintain this action.

In addition to this, as already appears in the operative part of the contract, there was an express promise to pay, and the provision in the last paragraph, that Samuel Hill ''shall be bound hereby to pay as between him and his brother,'' neither adds nor detracts from that promise. The agreement is, in the ordinary case, between the one making the promise and the debtor, just as in this case, though it may not be reduced to writing. The same result is arrived at whether we consider the agreement as made at the time of the conveyance or the giving of the note or the one specified in the operative part of the contract.

There is another feature to which attention should be called, and that is the last sentence in the contract, which says that, as between Samuel Hill and his brother, the agreement shall have the same effect as though Samuel Hill, together with his brother, had ''jointly executed said note.'' If they had jointly executed the note at the time the agreement was made, the right of the appellant to maintain an action upon it against Samuel Hill is beyond question. When read

in its entirety, the contract makes it clear that Samuel Hill took upon himself, and adopted, the obligation which his brother had incurred, to the extent of one-half thereof.

In *Lenz v. Chicago & Northwestern R. Co.*, 111 Wis. 198, 86 N. W. 607, it was said:

"Obviously, to take upon one's self or to adopt the obligation or the liability of another is to put one's self in the place of that other as to such obligation or liability, to become bound as such other was bound."

In Restatement of the Law of Contracts, American Law Institute, Vol. I, p. 160, it is said:

"The promisor who undertakes to pay a debt of the promisee subjects himself to a duty both to the promisee and to the creditor beneficiary."

Aside from all this, the equities of the case are decidedly with the sister. The transaction by which she sold her interest in the properties to her brother and took the note therefor was brought about by Samuel Hill, and at that time his agreement to pay one-half thereof was not limited or sought to be limited as between himself and his brother. The sister, under the equities of the case, was entitled, under the doctrine of subrogation, to maintain the action through her guardian.

In *Johnson v. Martin*, 83 Wash. 364, 145 Pac. 429, it was said:

"The supreme court of this state has taken its stand with those courts which have declared that the right of subrogation will be allowed when the equities of the case demand it. *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998."

Cases such as *Horstmann Co. v. Waterman*, 103 Wash. 18, 173 Pac. 733, 1 A. L. R. 856, and *Schoemer v. Zeran*, 126 Wash. 219, 217 Pac. 1009, and other similar cases cited, where the obligation to pay the

222

costs of performing a particular undertaking was general and not a direct promise to a particular named person, are not applicable to the present situation.

The contract upon which the second cause of action was based was in all material respects the same as that upon the first, though it related to improvements made upon one of the properties for the payment of which the money was borrowed from Anna E. Hill and not repaid. The appellant was entitled to recover upon both of these causes of action, as well as upon the third. There is no controversy over the amount.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment as herein indicated.

GERAGHTY, TOLMAN, BEALS, and STEINERT, JJ., concur.

