[No. 37897.    Department Two.    March 3, 1966.]

PAUL R. SIMMONS, *Appellant*, v. GARDENSPOT RANCH, INC., *Respondent*.*

*Cheadle, Clanton & Woeppel*, by *Fred E. Woeppel*, for appellant.

*Brown & Thayer*, by *Robert M. Brown*, for respondent.

BARNETT, J.†—Appellant Paul, Simmons desired to purchase a ranch owned by respondent Gardenspot Ranch, Inc., located in Stevens County. As a result of negotiations between them, the parties executed an "earnest money agreement" on October 3, 1962, wherein they agreed that the total purchase price was to be $320,000. The document recited that appellant was to assign "as down payment" a $100,000 interest which he held on certain California property. This interest was in the form of a promissory note secured by a deed of trust on the property. The remaining $220,000 of the $320,000 total purchase price was to be paid by appellant in annual installments commencing on January 1, 1966. Two interest payments on this $220,000

*Reported in 411 P.2d 857.

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

amount were to be made by appellant on January 1, 1964, and on January 1, 1965.

On January 31, 1963, the parties gathered in the offices of the Spokane Escrow Company for the purpose of closing the transaction. There, three different documents were drafted and executed. An instrument denominated a "Conditional Sales Contract and Sale Agreement" hereinafter called the sale agreement, was executed by appellant and respondent. This writing contained the basic terms of the earnest money agreement with the exception that it did not specifically recite that the $100,000 assignment was to be made as "down payment." Its specific language was: "The total purchase price is $320,000 . . . to be paid in the following manner: $100,000 thereof by the purchaser herein making a partial assignment of an indebtedness secured by a Deed of Trust." The instrument is silent as to whether the $100,000 assignment was considered by the parties as "down payment."

The same document contained a provision that the property sold to appellant included certain items of personal property, to which a value of $30,000 was assigned. It was agreed that title to this personalty was to be retained by the seller until (1) all monthly payments were made on the note assignment through January 1, 1965, and (2) the first two annual interest payments on the $220,000 portion of the obligation were made when due, i.e., on January 1, 1964, and January 1, 1965. Upon the fulfillment of these conditions, title to the personalty was to be transferred to appellant. A forfeiture clause was also included in this sale agreement, providing: "Should the purchaser fail to make the payments or to keep and perform any of the covenants and agreements herein mentioned, the same shall constitute a forfeiture . . . and the purchaser shall forfeit to the vendors as liquidated damages all payments made hereunder."

To perform his duty under the sale agreement, appellant executed a second instrument, entitled "Partial Assignment of Trust Indebtedness." By its terms, appellant assigned

his interest in a promissory note and a trust deed held as security to the extent of $100,000. In addition, appellant guaranteed the payment of the assigned note, and promised to hold respondent harmless should loss be suffered by the failure of the note obligors to make the monthly payments.

A third instrument, denominated "Supplemental Agreement," was executed by appellant's father, mother and brother, whereby these persons likewise guaranteed the note assignment. This writing, *inter alia,* contained the following recital: "AND WHEREAS, Paul R. Simmons has guaranteed a partial assignment of a trust indebtedness and obligation on the sale of property in . . . California, *as part of the consideration and the down payment.*" (Italics ours.)

On May 5, 1963, another "Supplemental Agreement" was executed, this time by appellant, his mother, father and brother. The purpose of this instrument was to amend the assigned amount from $100,000 to some $100,170, and to extend the prior guaranties to the added sum. This instrument is of interest in that it contains the following recital: "AND WHEREAS, Paul R. Simmons *as part of the down payment* made a partial assignment of trust indebtedness and obligations on the sale of the property in . . . California, *as part of the consideration and down payment.*" (Italics ours.)

Appellant took possession of the ranch in February of 1963. Monthly payments on the assigned note were made to respondent by its California obligors until November of 1963. None have been made since. Appellant failed to make the January 1, 1964 interest payment on the $220,000 portion of the obligation. Thereafter, respondent gave appellant written notice of default for the stated reason that the above-mentioned interest payment was not made, and declared forfeiture. Appellant, by letter, admitted default and acquiesced in the forfeiture, but demanded the return of the note and trust deed. This demand was refused, and appellant commenced this lawsuit to recover these instruments.

The trial court made the following findings, *inter alia*:

That the sum of $100,000.00 mentioned in Exhibit 2, Conditional Sales Contract and Sale Agreement, was intended by the parties to the contract to be a conditional payment, conditioned upon all payments being made on the Deed of Trust note through January 1, 1965, said payments being in the amount of $1,095.00 per month, including interest and also conditioned upon the two interest payments called for by Exhibit 2 being made, one on January 1, 1964 and the other on January 1, 1965, upon which condition being performed the bill of sale would be given to plaintiff for the personal property sold in Exhibit 2 and that thereafter the $100,000.00 amount mentioned in Exhibit 2 would be accepted as payment. Finding of Fact No. 6.

That payments on the California note, Exhibit 3, were not made for the months of November and December 1963 and all through 1964 and, of course, not in 1965. That further, plaintiff did not make the interest payment due in the amount of $11,091.67 on January 1, 1964 and therefore when the Notice of Forfeiture was sent out by defendant Gardenspot, said notice forfeited out the $100,000.00 portion of Exhibit 2 except for the payments in the amount of $1,095.00 including interest due for said months, that is a period of 15 months or a total of $16,-425.00. That of the said $100,000.00 portion of Exhibit 2, there was a balance of $95,333.27 on Nov. 1, 1963, and 10.078% thereof was not forfeited out by the notice of forfeiture, which is Exhibit 14. Finding of Fact No. 7.

From these findings, the court concluded that all of the $100,000 assignment was forfeited by appellant with the exception of $9,607.83. Judgment was entered ordering respondent to reassign the note and trust deed to appellant to the extent of $9,607.83, from which this appeal is taken. It was the determination of the trial court that because there was a portion of the $100,000 assignment secured by the retention of title to the personalty, that portion, and that portion only, was *not* down payment, and therefore *not forfeited*. The portion of the $100,000 assignment which was *not secured* by the retention of the personalty was determined to be down payment and therefore forfeited. It is appellant's theory that *none* of the $100,000 assignment

was down payment, nor forfeited, except the payments which had been made on the note prior to November of 1963. Since respondent-seller does not appeal the decision of the trial court that the secured portion of the $100,000 assignment was not down payment, and not forfeited out, we will not address ourselves to that question. For our purposes the only issue on appeal is whether the evidence supports the trial court's finding that the $100,000 assignment (less the amount secured by personalty) was made as down payment on the purchase price of the ranch. If it does, the decision that this amount was forfeited by appellant was correct.

We are immediately confronted with the contention that the trial court's conclusions of law are inconsistent with its findings. When we review the findings of fact and the conclusions of law, we see that the trial judge patently found and concluded that the $100,000 assignment (less the amount secured by personalty) was down payment and subject to forfeiture.

█ There is no doubt that a vendor can sell property on conditional sale, accept a note as down payment, then recover on the note following a declaration of forfeiture and repossession. *Van Geest v. Willard,* 27 Wn.2d 753, 180 P.2d 78 (1947). Whether a note is accepted as unconditional payment or merely as evidence of deferred payments is dependent upon the agreement and intention of the parties.

We hold that the evidence, considered as a whole, supports the finding that the parties intended the $100,000 assignment (less the amount secured by personalty) to be the down payment on the purchase price and was forfeited by appellant. The documentary evidence alone would appear to support this conclusion. The earnest money agreement specifically recites that the assignment is made "as down payment." And although the sale agreement does not mention these words, the language "The total purchase price is $320,000 . . . to be paid in the following manner: $100,000 thereof by the purchaser herein making a

partial assignment of an indebtedness secured by a Deed of Trust," does not detract from the interpretation that the note was assigned and accepted as down payment. That the parties considered the assignment as having been a down payment is evidenced by the two "Supplemental Agreements" which contain recitals referring to the assignment as "down payment." There was other evidence tending to support the same finding. A balance sheet in the custody of the escrow company reflected that a balance of only $220,000 remained on the purchase price. An officer of respondent corporation testified that the assignment was accepted as "down payment." It is to be noted also that the "interest" which appellant was to pay was calculated not on $320,000, but on $220,000, indicating that the latter amount was all of the purchase price that remained to be paid. Finally, there is the testimony of witness Cooper, an attorney for the escrow company who drafted the various instruments, to the effect that, before respondent would accept the note assignment, it had to have assurance that it would be paid, and therefore the guaranty of the father, mother and uncle was needed.

Appellant contends that since the words "the receipt whereof is hereby acknowledged" (referring to the $100,000 assignment) are not present in the sale agreement; and since the words "and the balance of $220,000 payable as follows" are likewise absent, there is no evidence from which it could be found that the parties intended the assignment to be the down payment. Admittedly, if these recitals had been present in the sale agreement, there would be little room for disagreement as to the parties' intent. But their absence does not preclude a finding that the parties considered the assignment as payment. Appellant also relies heavily on a provision of the sale agreement by which appellant promises to "make every effort to refinance this contract when said contract has been reduced to an amount so the purchaser can secure a loan." This provision, he argues, indicates that the total purchase price of $320,000 is to be later refinanced, and that, therefore, the parties

could not have considered that $100,000 of it had been paid. We find no merit in this contention. This provision does not militate against the conclusion that a balance of only $220,000 remained.

A review of the record reveals sufficient evidence to support the trial court's finding that the $100,000 assignment (less the amount secured by the personalty) was made and accepted as down payment, and was thereby subject to the subsequent forfeiture.

Judgment affirmed.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.