[No. 38152. Department Two. July 21, 1966.]

ROGER L. SHELTON et al., *Appellants*, v. A. G. FOWLER et al., *Respondents.**

*Hawkins, Ingalls & Bonjorni*, for appellants.

*Alan L. Froelich* (of *Wright, Wendells, Froelich & Power*), for respondents.

DONWORTH, J.—This is an appeal from a judgment of dismissal entered at the end of plaintiffs' case after the court had sustained a challenge to the sufficiency of evidence. There are five married couples who were plaintiffs in the trial

*Reported in 417 P.2d 350.

court and are appellants in this appeal.[1] Each couple purchased land and/or a home in the same development located in King County from defendants A. G. Fowler and wife at different times in separate transactions. They each claim that Mr. Fowler orally promised them that he would bring the roads in the development up to minimum county specifications and would then turn the roads over to the county for maintenance. Although both Mr. and Mrs. Fowler are named as defendants, all the details of these transactions were allegedly made with Mr. Fowler, and hence he will be referred to herein as if he were the only defendant-respondent.

The question with which this opinion will be concerned is whether there was an *enforceable promise* made by defendant-respondent to any or all of the five couples designated as appellants to improve certain roads in the development so that they met the minimum county specifications and could be turned over to the county for maintenance. Appellants alleged and testified that defendant-respondent did so promise, and he, in each instance, specifically denied that he had so promised. The trial court did not decide the factual issue as to whether defendant-respondent did so promise.

The trial court, in sustaining defendant-respondent's challenge to the sufficiency of appellants' evidence, held:

(1) That the evidence of such alleged promises could not be considered because of the parol evidence rule;

(2) That such a promise must be in writing because of the statute of frauds, and that, since these alleged promises were oral, they were therefore unenforceable; and

---

[1]Originally there were nine couples designated as plaintiffs in this suit. Two of them were dismissed from the suit because of the running of the statute of limitations on oral contracts. The other two couples were dismissed for failure to appear to testify. One potential plaintiff was called as an adverse witness by defendants, but was not permitted to testify because he would have testified concerning only his own transaction, which is not relevant to the claims of the other parties. On the same ground, many other couples who have purchased homes in this development were not called as witnesses. Only the five couples named in the caption have appealed from the trial court's judgment.

(3) That the alleged promises were so indefinite that neither a decree of specific performance nor a judgment for damages could be based on them.

In other words, the trial court held (in effect) that, even if the plaintiffs' evidence were believed, defendant-respondent had not made an enforceable promise for each of the above reasons.

The following evidence presented by appellants concerning the transactions between each of the five separate couples and respondent is pertinent.

The evidence concerning the sales of the real property interests purchased by each appellant couple was in the form of testimony of one spouse or the other and the written agreements or conveyances executed by respondent and some appellants. Each couple's claim must stand on the evidence relevant to the separate agreement between them and respondent.

There is considerable testimony in the record from each appellant to the effect that the roads in the development were reasonably good only when the weather was dry, and that the roads were so obviously undeveloped that foremost in the minds of every appellant couple prior to their purchase was their concern that something would have to be done about the roads, and that, because of this situation, their discussions with Mr. Fowler about the roads were specific.

The Sullivans purchased a lot from respondent, on 103rd Place S. E., in October 1957, and the title was cleared in July 1958. Thereafter, the Sullivans built a house on the lot. The purchase was apparently a cash transaction, and the transfer was by deed. The deed is not in evidence. Mr. Sullivan testified at the trial that there was no provision in the deed which promised that the roads in the development would be brought up to county specifications.

Mr. Sullivan testified extensively to the effect that Mr. Fowler orally promised him that all the roads in the development would be brought up to minimum county specifications and would then be turned over to the county for maintenance. He stated that Mr. Fowler had promised to

do the road work after the houses which Mr. Fowler was currently building on 103rd Place S. E. were completed. These houses were substantially finished either in late 1960 or in the early part of 1961.

The Andersens purchased a lot on an earnest-money agreement in August, 1959. Mr. Fowler was to build a house on the lot, which was finished in December 1959, after which the Andersens moved in. The Andersens continued to make monthly payments according to the provisions of the earnest-money agreement until May 19, 1964, at which time a real-estate contract was executed. Thereafter, the Andersens made payments under the provisions of the real-estate contract. The earnest-money agreement was not introduced into evidence. Mr. Andersen stated that there was nothing in the earnest-money agreement about roads, because he accepted Mr. Fowler's word that the roads would be built up to county specifications. There was no provision included in the real-estate contract (exhibit No. 6) in which Mr. Fowler promised that he would bring the roads in the development up to minimum county-road specifications. The real-estate contract contains a merger clause which reads:

> The parties agree: . . . (2) That the purchaser has made full inspection of the real estate and that no promise, agreement or representation respecting the condition of any building or improvement thereon, or relating to the alteration or repair thereof, or the placing of additional improvements thereon, shall be binding unless the promise, agreement or representation be in writing and made a part of this contract; . . . .

Appellants Manny purchased their lot in 1959 at the time that the house was being built. The only evidence of the sale is apparently an earnest-money agreement which provided the terms of the purchase. The earnest-money agreement was not offered in evidence. Mr. Manny testified that there was nothing in the earnest-money agreement which pertains to the roads or to the improvement of the roads.

Mr. Manny testified that, between April, 1959, when he and his wife first looked at the premises which they later purchased, and July, 1959, when the sale agreement was

made, he and Mr. Fowler had had several conversations about the kind of roads which they would have in the development. He claims that Mr. Fowler stated to him that, after the houses were built and the heavy equipment would no longer be moving along the roads, Mr. Fowler would then bring the roads up to county specifications and turn them over to the county for maintenance. Mr. Manny claims that he purchased in reliance on this statement by Mr. Fowler.

Appellants Hollis purchased their home in March, 1960, by executing an earnest-money agreement with the Fowlers. The earnest-money agreement was admitted in evidence as exhibit No. 8. It contained no reference to roads or road improvement. The "merger clause" and other clauses originally contained in the printed form were crossed out.

Mrs. Hollis testified that Mr. Fowler stated to her and her husband, prior to the purchase and the execution of the earnest-money agreement, that the roads into the development would be brought up to county specifications and turned over to the county for maintenance. Mr. and Mrs. Hollis inquired what the county specifications required, to which Mr. Fowler replied that the roads must be hard surfaced and ditched for drainage. Mrs. Hollis testified that she then asked that the promise to bring the roads up to county specifications be placed in their earnest-money agreement. She stated that Mr. Fowler said, in response, that this was not necessary because he had promised to improve the roads when he sold to the other persons in the development, and, therefore, he had to do the work— that it just wasn't necessary to put his obligation in writing.

Appellants Shelton purchased their property from the Fowlers on an earnest-money agreement, apparently, in November, 1960, and later a real-estate contract was executed on January 4, 1961, which contained the terms of the sale to the Sheltons. The real-estate contract is in evidence as exhibit No. 7. It contained no reference to roads or the improvement of roads. It did contain a merger clause which is identical to the clause in the Andersens' contract quoted above.

Mr. Shelton testified that Mr. Fowler promised orally that

he would bring the roads up to county specifications and turn them over to the county for maintenance, and that this statement by Mr. Fowler was made prior to their purchase of the property from the Fowlers.

The testimony of all five appellants indicates that Mr. Fowler has been repeatedly asked by appellants when he intended to fulfill his promise to bring the roads up to county specifications. They consistently testified that Mr. Fowler did not disavow the making of this promise, but that he had repeatedly given reasons why he could not do the work immediately. First, he stated that the work could not be done because of the construction equipment moving over the roads during the building of houses. Later, he stated that the work could not be done because of the rains and weather. At another time he stated that his equipment was in need of repair and that the road work would have to await the completion of repairs. Even later, he took the position that he did not have enough money to do the work. Some of the appellants testified that Mr. Fowler finally stated to them that he would not do the work now because appellants had tried to force him to do the work, and because he could not be compelled to do it, and that he would show them who is in control of the situation.

In addition to the conversations which appellants claim that Mr. Fowler has had with each of them as individual couples, appellants testified that there have been two meetings at which Mr. Fowler was present which concerned the attempts to get something done about the roads in the development.

The first meeting was at the Manny house in the fall of 1960. The meeting was called by Mr. Manny. About nine families residing in the area were represented at the meeting, which was attended by Mr. Fowler. Mr. Manny, Mr. Andersen, Mr. Sullivan, and Mrs. Hollis each testified that at this meeting Mr. Fowler had not denied that he had promised to build the roads up to county specifications, and that, when he was asked when he intended to do the work, he stated that it could not be done then, and that any attempt to work the roads would only make them worse until after

the rains stopped in the spring. He then stated that he would do the work in the spring of 1961. Mr. Manny, in particular, testified that Mr. Fowler was asked to put in writing the promise to build the roads to county specifications in the spring of 1961. According to Mr. Manny, Mr. Fowler's reply was that a writing was unnecessary, because "gentlemen just don't do business that way."

The second meeting occurred after a regular local water district meeting. Mr. Anthony (who would have been a plaintiff except for the fact that an attempt to amend the complaint at the start of trial to include Mr. Anthony was denied by the court because it was not possible to give defendant's counsel the benefit of pretrial discovery) presided over the water district meeting. After that meeting adjourned, an attorney representing Mr. Fowler advised the group that he had been told that the local residents wished to form a local improvement district to improve the roads. Mr. Anthony testified that appellants (and apparently many others who were present) objected to such a move because they contended that Mr. Fowler had promised, when they had purchased their properties, to improve the roads and pay for the improvement himself, and that they were not going to pay for this work themselves, because it was Mr. Fowler's responsibility. Mr. Anthony and Mr. Manny, and other appellants, testified that Mr. Fowler stated that he could not afford to do the work because it would cost too much. There was, according to appellants' testimony, no denial by Mr. Fowler that he had previously promised that he would do the work.

There was also testimony from Mr. Manny, Mr. Andersen, and Mr. Sullivan to the effect that, in the spring of 1961, Mr. Fowler had stated that he would start the work soon, and that a survey had been made, and a man selling drain tile had been around to their homes to take orders for drain tile from each landowner in the development. Appellants inquired who was to pay for the tile. Upon being informed by the tile salesman that appellants were to pay for the tile, they refused to order.

Mr. Fowler was called by appellants as an adverse wit-

ness. He categorically denied most of the conversations testified to by appellants. He denied that, at the meeting at the Manny house, he had promised anything about improving the roads, although he admits that he was at the meeting, and he appears to acknowledge that appellants inquired about the roads. He stated that appellants "broke up" the meeting which had been called to form the proposed local improvement district. He steadfastly maintains that roads were never discussed with any of the appellants prior to the purchase of a home by each couple. In his testimony, he intimates that the whole consideration was stated in the instruments of sale, and that appellants were mainly concerned about terms (low down payment and low monthly payments) and over-all low price, and that *all* of the promises he had made and those that appellants had made are in writing.

Appellants assign as error the rulings of the trial court on which the complaint was dismissed and a new trial was denied.

(1) The trial court erred in excluding plaintiffs' testimony as to the parol contract to build roads.

(2) The trial court erred in dismissing the actions at the close of plaintiffs' case on respondent's challenge to insufficiency of the evidence.

(3) The trial court erred in dismissing the actions at the close of plaintiffs' case for the stated reason that the alleged contract was too indefinite and uncertain to be enforceable.

(4) The trial court erred in denying plaintiffs' motion for reconsideration or for a new trial.

An understanding of the parol evidence rule is the key to the disposition of the first two assignments of error in this case. Respondent moved for a dismissal on the ground that all the testimony of the various appellants who testified was inadmissible as evidence of a contract because of the parol evidence rule. Without the oral testimony of appellants, there was absolutely *no* evidence in the record of a promise to improve the roads in the development. Therefore, the issue in the second assignment of error is decided

by the answer to the first assignment of error. The question is whether the testimony of appellants can be admitted to prove the making of an additional promise beyond those contained in the written instruments of sale.

█ It is a well-established rule in this jurisdiction that parol evidence will not be admissible to vary the promissory terms of a written contract. See *Seattle-First Nat'l Bank v. Pearson,* 63 Wn.2d 890, 389 P.2d 665 (1964); *City Nat'l Bank of Anchorage v. Molitor,* 63 Wn.2d 737, 388 P.2d 936 (1964); *Fleetham v. Schneekloth,* 52 Wn.2d 176, 324 P.2d 429 (1958); *St. Paul & Tacoma Lumber Co. v. Fox,* 26 Wn.2d 109, 173 P.2d 194 (1946).

█ In *Kinne v. Lampson,* 58 Wn.2d 563, 567, 364 P.2d 510 (1961), this court discussed proof of consideration and the parol evidence rule:

> Parol evidence has been held to be admissible to show what the true consideration is where the contract contains a mere recital of consideration (*e.g.,* "one dollar and other valuable consideration") as contrasted to contracts in which the stated consideration is a "contractual element" of the contract. [Citing authorities.] Parol evidence is also admissible to show any consideration which is consistent with the stated consideration; in *Roberts v. Stiltner, supra* [101 Wash. 397, 172 Pac. 738], the purchaser was allowed to show that the seller had accepted property worth $2,700 in lieu of the $2,700 cash consideration stated in the contract.
>
> In the instant case none of the factors necessary to vary the stated consideration by parol evidence is present. The consideration, the purchase price of the boiler, is spelled out precisely, including the installments in which it is to be paid. It is clearly made a "contractual element" of the agreement. Since the contract did not specify that it operated as a settlement of the lawsuit [the original bargaining was started as a possible means of settling the lawsuit in this case], and since it cannot be varied by parol evidence, the trial court erred in granting respondent's motion to dismiss the case on grounds of settlement.

This principle of law is applicable to the facts of this case. Appellants claim that respondent promised to improve the roads in the development. However, the written instruments of sale which were received in evidence as exhibits

all contain very specifically detailed promises by both the purchasers and the sellers which were the consideration for the sale. The instruments even contain such provisions as a description of the nature of the water supply and the promise of the seller to reserve an interest in the private community water supply system for the purchasers. The considerations recited in these instruments are very specific and contractual in character. To allow the purchasers to claim now that there was an additional promise—the promise to improve the roads of the development—would be to permit the consideration of the contract to be changed so as to increase the obligations of one party without any increase in the obligations of the other.

This is exactly the kind of claim against which the parol evidence rule was intended to protect a contracting party. Every party to a written agreement is entitled to this kind of protection. That is the very purpose and reason for including the precise details of a transaction in a written instrument rather than merely stating therein the simple general terms which would normally satisfy the statute of frauds. The considerations going to each party under the respective written agreements cannot be changed so that the consideration to be furnished or performed by one party is substantially increased while that to be furnished or performed by the other party remains unchanged. This is precisely what appellants prayed for in their complaint and are asking this court to order the trial court to do in this case, to wit, to grant specific performance of an alleged promise by respondent to build roads to county specifications at a cost of at least $10,000 (and possibly much more) without appellants paying one cent greater consideration than that provided for in their respective agreements with respondent.

Appellants argue that the case of *Becker v. Lagerquist Bros.*, 55 Wn.2d 425, 348 P.2d 423 (1960), controls this case. We disagree. The *Becker* case, *supra*, is an unusual case. The so-called "parol" promises and inducements given to purchaser were actually written in sales brochures and letters and appeared on signs installed in the development.

No written promises or representations regarding road improvements were introduced in evidence in the present case. Here, the considerations passing from each party to the other were definitely and specifically set forth in the respective contracts. Furthermore, the legal issues in the *Becker* case, *supra,* were that (1) the "merger clause" did not operate to exclude evidence which would otherwise be admissible under the parol evidence rule, and (2) that the parol evidence rule does not exclude evidence which could not reasonably be expected to be embodied in the written instruments.

■ In the present case, the parol evidence rule is applicable because the alleged agreements to improve the roads could reasonably be expected to be embodied in these particular instruments. The alleged promises were claimed to be part of the consideration to be given by the seller to the purchasers in connection with the sales.

All of the detailed promises of each party (other than road improvements) involved in the transactions of the parties in this case appear to have been fully stated in the written instruments. The fact that the alleged road promises were not included in the written instruments is very significant. The trial court's comments in this regard in its oral opinion are pertinent and appropriate. The trial court stated:

> I don't believe there is anything to support the doctrine of partial integration. The question of contemporaneous collateral agreement doesn't enter into it for the reason that appears to me to be rather self-evident under an agreement such as Exhibit 8. [The Hollis earnest-money agreement.] Certainly if the parties had the water situation in their mind, they had in mind an unusual provision. Why wouldn't they have in mind the unusual provision of building up roads?

It is this point which distinguishes this case most clearly from the majority holding of *Becker v. Lagerquist, supra.* In the *Becker* majority opinion, it is clear that the sole argument for the application of the parol evidence rule depended on the statute of frauds and the existence of a

very broad merger clause. There was considerable undisputed written evidence that the earnest-money agreement was not necessarily the integration of the whole agreement. We do not have this strong, undisputed evidence of a partial integration in this case, and the statute of frauds is not the basis for determining that the agreement to improve the roads would have been in the written instruments, assuming that it had been made. Instead, we have in this case some very detailed written instruments, which cover the purchase terms and exchanged promises in great detail (much greater detail than is necessary to satisfy the statute of frauds) and there is no indication in any part of the agreements of the need for reference to the alleged promise to improve the roads. In this important respect, this case differs significantly from the grounds relied on by the majority in the *Becker* case, *supra.*

Because the claims of appellants are dependent on parol evidence, and because this evidence is not admissible for the purpose of proving the alleged oral promise to improve the roads, it follows that there was no evidence to support the claims of appellants, and the trial court had no choice but to dismiss their action. We find no merit in appellants' first two assignments of error.

Appellants, in the third assignment of error, assert that the trial court erred in concluding that the evidence presented by them was too indefinite to establish the terms of the alleged oral promise to improve the roads. We need not reach this assignment since, for the reasons stated above, their testimony cannot be considered as proof of the alleged additional promise because of the parol evidence rule.

Appellants' assignment No. 4 is that the trial court erred in refusing to reconsider its judgment or grant appellants a new trial. No additional argument is made in support of this assignment, and, therefore, it requires no discussion other than to say that, for the reasons stated herein, we find no error in the denial of the post-trial motions.

Having found no merit in any of appellants' assignments

of error, the trial court's judgment should be, and is hereby, affirmed.

ROSELLINI, C. J., FINLEY and WEAVER, JJ., and LANGEN-BACH, J. Pro Tem., concur.