[No. 39320.    En Banc.    August 20, 1970.]

GREEN RIVER VALLEY FOUNDATION, INC., *Appellant,* v. RALPH G. FOSTER *et al., Respondents.*\*

\*Reported in 473 P.2d 844.

*Lycette, Diamond & Sylvester,* by *Lyle L. Iversen,* for appellant.

*Curran, Kleweno & Curran* (*James P. Curran,* of counsel), for respondents.

NEILL, J.—Plaintiff, the purchaser under a real-estate earnest money receipt, appeals from a judgment denying specific performance of the contract. Defendants Foster are the vendors in that agreement who contend that they properly rescinded the contract by reason of plaintiff's failure to timely pay the earnest money.

Plaintiff assigns error to the admission of oral testimony which allegedly varies the terms of the written agreement; to the trial court's finding that a promissory note was not taken by the vendors as earnest money; and, on the basis of these asserted errors, to the holding that failure to pay the note within 60 days permitted the vendors to rescind the agreement.

We conclude that the admission of the oral testimony did not transgress the parol evidence rule as that testimony does not vary the written agreement of the parties, properly construed. We also hold that the assertion the note was taken as payment of earnest money is contradicted by other language in the agreement.

The Fosters reside in the Green River Valley. They have

previously bought and sold real estate, but Mr. Foster is a roofer and there is nothing in the record to indicate that they deal in real estate as a business. On September 25, 1965, they listed the property in question for sale through a Mr. Howk, with whom they had dealt when they purchased the property from its previous owner. Mr. Howk showed the property on several occasions. He also notified Mr. O'Brien, a real-estate broker, that the property was for sale.

Shortly thereafter, Mr. O'Brien informed Mr. Howk that he had an interested buyer. On the evening of October 5, 1965, Mr. Howk and Mr. O'Brien went to the Fosters' home, where Mr. O'Brien presented the Fosters a signed earnest money agreement and promissory note on behalf of the plaintiff. From conflicting testimony, the trial court found as fact that at the time the papers were presented to the Fosters a representation was made by Mr. O'Brien that the earnest money would be paid to the Fosters within 60 days.

The earnest money agreement was prepared by filling blanks on a printed form bearing the number 31270. It begins:

> Received from *Green River Valley Foundation, Inc.* (hereinafter called "Purchaser") *Five thousand and no/100* ——Dollars *($5,000.00)* in the form of . . . Note for *$5,000.00,* due *sixty days,* paid or delivered to agent as earnest money in part payment of the purchase price of [property described].
>
> Total Purchase Price Is *Forty six thousand and no/100 ($46,000.00)* payable as follows: *Thirteen thousand, three hundred forty dollars cash including above receipted for Earnest money, as down payment.* [Italicized matter was inserted on the printed form.]

The earnest money agreement contains the usual "time essence" provisions. The promissory note referred to in the earnest money agreement and delivered by plaintiff is also a printed form, but bears on its face the typewritten words "subject to Earnest money agreement #31270."

Green River failed to pay the promissory note at maturity. After several requests for payment, the last of which occurred just prior to Christmas, 1965, the Fosters refused

to perform further under the earnest money agreement and, on January 11, 1966, declared it rescinded. On January 17, 1966 (6 days after defendants rescinded), Green River paid to the escrow agent $13,340, which included $5,000 for the earnest money note. On the same day, it paid O'Brien Realty the accrued interest on the note.

When the Fosters persisted in their refusal to proceed with the sale, Green River commenced this action for specific performance. During the trial, and over plaintiff's objection, Mr. and Mrs. Foster were each permitted to testify that they had been told at the October 5th meeting that they would receive the $5,000 earnest money within 60 days. The trial court ruled that the failure to pay the $5,000 to the defendants or their agent justified rescission of the contract.

It is plaintiff's contention that the defendants' testimony varied the terms of the written agreement and thereby violated the parol evidence rule. The essence of this position is plaintiff's claim that, by the contract terms, the promissory note was taken as payment of the earnest money rather than as evidence of an obligation to pay. We do not agree with that premise.

Plaintiff's assertion that the promissory note was taken as payment is belied by a proper construction of the entire writing, without resort to extrinsic evidence. The testimony that the purchaser's undertaking was a promise to pay the earnest money in 60 days does not give rise to considerations of the parol evidence rule because that testimony did not tend to alter or contradict the terms of the written agreement.

■ The agreement consists of two documents, the printed earnest money form and the promissory note, each of which has reference to the other. These should be read together. *Levinson v. Linderman*, 51 Wn.2d 855, 322 P.2d 863 (1958), and authorities cited. The earnest money form contains a printed recital that the note is received as earnest money. On the other hand, the promissory note has added thereto a typewritten provision that it is "subject to

Earnest money agreement #31270." To make a promissory note "subject to" the terms of another agreement is not merely to refer back to that agreement. Such a restriction here precludes the note from operating as an unconditional promise to pay, and is directly contrary to the agreement's printed recital that the note is taken as payment. This contradiction is resolved by reference to familiar rules of contract construction.[1]

■■ In construing an agreement containing a conflict in terms, courts must give effect to the manifest intent of the parties. *Starr v. Mutual Life Ins. Co.*, 41 Wash. 228, 83 P. 116 (1905). Courts should not find an ambiguity in order to construe the contract, and an ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole. *Grant County Const'rs v. E. V. Lane Corp.*, 77 Wn.2d 110, 459 P.2d 947 (1969). Where provisions of the same transaction are clear but conflicting, the operative provisions prevail over the recitals. *First Nat'l Bank & Trust Co. v. United States Trust Co.*, 184 Wash. 212, 50 P.2d 904 (1935); *Brackett v. Schafer*, 41 Wn.2d 828, 252 P.2d 294 (1953). Moreover, written or typed provisions prevail over conflicting printed clauses. *Creditors Ass'n v. Fry*, 179 Wash. 339, 37 P.2d 688 (1934).

When this sale agreement is read in accordance with the foregoing principles, the question of whether the note was taken in payment or merely as evidence of an obligation is

---

[1]As our consideration of this appeal has already consumed an inordinate amount of time, we will not further delay resolution of this controversy by now writing a full response to Justice Finley's concurrence. Suffice it to say, we adhere to our established approaches to contract construction, which provide ample means for the just resolution of this case, and which we regard as objective, realistic and sufficiently flexible. *See e.g., Becker v Lagerquist Bros., Inc.*, 55 Wn.2d 425, 348 P.2d 423 (1960); *Black v. Evergreen Land Developers, Inc.*, 75 Wn.2d 241, 450 P.2d 470 (1969). We do not, by this, mean to imply either acceptance or disapproval of the approaches suggested by *Masterson v. Sine*, 68 Cal. 2d 222, 436 P.2d 561, 65 Cal. Rptr. 545 (1968), and *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 442 P.2d 641, 69 Cal. Rptr. 561 (1968). *See also,* Corbin, *The Interpretation of Words and the Parol Evidence Rule,* 50 Cornell L.Q. 161 (1965). Such considerations await a more appropriate case.

resolved without resort to extrinsic evidence. The typed restriction on the note conditions its efficacy on the terms of the earnest money agreement. The typed restriction controls over the printed recital that the note is taken as payment. The note, then, is merely evidence of the obligation expressed in the earnest money agreement. By the terms of that agreement, the purchaser is obliged to pay $5,000 earnest money within 60 days, and the vendors are entitled to forfeiture in the event of default by the purchaser.

The testimony to which plaintiff purchaser objects was that $5,000 was to be paid within 60 days. In that testimony there is no variance or contradiction of the written expressions of the parties. Under these circumstances, the parol evidence rule is irrelevant.

■ Even if we were to ignore established rules of construction, plaintiff's premise would not succeed. Absent the foregoing rules of construction, the variance between the quoted provisions results in ambiguity as to the intent of the parties regarding payment of the earnest money. It is axiomatic that extrinsic evidence such as that provided by the defendants' testimony, is admissible to clarify such matters. *E.g., Ramsey v. Sedlar*, 75 Wn.2d 901, 454 P.2d 416 (1969).

■ Plaintiff also argues that the inclusion of a provision in the note calling for 8 per cent interest after maturity is indication of the parties' understanding that the note need not be paid within the stated 60 days, and that the vendor's testimony would contradict that written understanding. The interest provision does not indicate a waiver of the 60 day requirement. On the contrary, such provision is logically included for reasons unrelated to the "time essence" or "payment" provisions of the agreement. The note expressly provides that it bears no interest prior to maturity; so the clause expresses the intent to create an 8 per cent rate after maturity, rather than the statutory 6 per cent. The right of the vendors to terminate the contract for default is a matter of election and, had defendants elected to proceed with the sale, they would have been entitled to 8

per cent interest on the delayed performance. This interest provision is not a waiver by the vendors of their right to forfeit upon the purchaser's default. Antecedent waivers of remedies must be clearly expressed and agreed upon. *See Pague v. Petroleum Prods., Inc.,* 77 Wn.2d 219, 224, 461 P.2d 317 (1969). The provision in question does not meet that requirement.

The Fosters had made several inquiries as to when they would be paid. The last of these was prior to Christmas 1965. Vendors' letter of rescission of January 11, 1966, terminated contractual relations for failure to pay the note, which was then some 37 days overdue. They had allowed the purchaser a reasonable time for performance. The rescission of January 11, 1966, was clearly consistent with the trial court's finding that plaintiff had failed to perform within the time provided or a reasonable time thereafter. An issue of waiver would arise only upon the interpretation that Fosters' conduct was inconsistent with the enforcement of the condition (payment of the earnest money within 60 days), an interpretation which is precluded by the findings and the evidence.

One final matter requires consideration. The trial court in its judgment expunged from the auditor's files a mortgage on the premises. This mortgage was given by plaintiff to C. W. Sederholm, who is not a party to this action. While the interest held by the mortgagee from a purchaser who is not entitled to specific performance is a cloud upon the vendor's title, it does not appear from the record that the necessary jurisdictional steps to remove it were properly taken. Counsel for defendants so conceded on oral argument. Accordingly, the judgment is modified by reversing that portion expunging Sederholm's mortgage without prejudice to any further action by defendants Foster to quiet their title.

The judgment as modified is affirmed.

HUNTER, C. J., ROSELLINI, HAMILTON, HALE, and McGOVERN, JJ., concur.

FINLEY, J. (concurring)—This appeal was originally heard over 2 years ago. It was reheard over a year ago. The proprieties, and I think candor, suggest mentioning the extensive consideration which this case has been accorded by the court. Perhaps it should be added that in the course of its somewhat lengthy consideration several proposed majority, concurring, and dissenting opinions were written by members of this court in an effort to resolve differing views and to find a basis for a consensus.

The difficulty was occasioned by the question as to whether the court should adopt certain fundamental changes in the parol evidence rule. The majority, as now written by Neill, J., eliminates that issue through a mechanical and, in my opinion, strained, if not somewhat tortured, application of rules of construction. The present majority opinion concludes that the documentary evidence of the agreement between the parties, through the use and application of rules of construction, is strikingly clear and unambiguous. But, in my judgment, this conclusion is belied by the very fact that the meaning of the contract has been the subject of considerable discussion and disagreement among the justices of this court who have had some part in the consideration of this case.

The majority uses technical rules of construction to interpret the disputed contract which, in large part, was drafted by laymen without legal advice. I am convinced the documentary evidence, standing alone without any resort to parol evidence, does not necessarily lead to the interpretation worked out by the majority through use and application of purely mechanical rules of construction. Any similarity between that interpretation and the intended bargain of the parties without the aid of parol evidence is simply fortuitous.

As noted by the majority, the difficulty in this case is caused by the use of the note along with the language in the earnest money agreement to the effect that the note was delivered "in part payment." This is not consistent with the phrase, "cash including above receipted for Earnest money, as down payment." If the note had been taken

in part payment, one would expect the agreement to provide for "cash" (in a lesser sum) "plus buyer's promissory note above receipted for as earnest money," or some other language indicating that the seller was satisfied with his remedies on the note.

The language is not made any clearer by looking at the typewritten phrase on the promissory note, indicating that it is "subject to Earnest money agreement #31270." It is agreed that the note is "subject to" the earnest money agreement. The question is what provisions of the earnest money agreement is it "subject to." Is it the provision that the note is taken in "part payment"? If so, the term "thirteen thousand, three hundred forty dollars cash including above receipted for Earnest Money" might include the note as a part of the "cash" even though it is nonnegotiable as a result of the "subject to" language. Consequently, the sole remedy would be an action on the note. But what of the language in the earnest money agreement to the effect that the sale was "subject to feasibility for purchaser's purpose and approval of purchaser's financing institution, within sixty days from above date." The note is also "subject to" this language. There is no indication of how "feasibility" is to be determined. If this is the subjective desire of the purchaser, the "earnest money agreement" is little more than an option and there is no possibility of instituting an action on the note. The note might be considered as actual payment; or it might be considered as evidence of a deferred payment of earnest money, to be paid if and when the purchaser decides the purchase is feasible. It is quite apparent the language involved could be interpreted in a number of disingenuous and tortured ways to claim, even "conclusively," that the note was intended either as payment or as evidence of a conditional obligation. The inescapable conclusion is, however, that the language involved is not nearly so clear as the majority would paint it—even after application of rules of construction.

However, the major difficulty with the use of technical rules of construction is that it focuses the arguments of counsel and the court's inquiry on the wrong issues. The

same difficulty is inherent in the use of ambiguity as a justification for the use of parol evidence. The inquiry should be directed toward discovering what these particular parties intended when they formed this particular contract. Instead, all too often the emphasis is placed on whether this phrase or that phrase is typed or printed. This is not to denigrate the value of rules of construction or interpretation as an aid to interpretation and application of the language of written documents. Unfortunately, there persists a pervasive tendency to treat rules of construction as ends in themselves instead of as aids. The policy considerations which originally prompted the adoption of the rules of construction are only infrequently considered worthy of scrutiny. I consider it more realistic to look beyond the rules of construction to the policy considerations which underlie those rules.

Ambiguity is also unreliable as an adequate test of the admissibility of parol evidence. The difficulty posed by feelings of judicial certainty in the face of contractual language of questionable meaning was well stated by Professor Corbin:

> It is true that when a judge reads the words of a contract he may jump to the instant and confident opinion that they have but one reasonable meaning and that he knows what it is. A greater familiarity with dictionaries and the usages of words, a better understanding of the uncertainties of language, and a comparative study of more cases in the field of interpretation, will make one beware of holding such an opinion so recklessly arrived at.

3 A. Corbin, Contracts § 535 (1960). *Cf. Daman v. Walton Lumber Co.,* 53 Wn.2d 747, 753, 337 P.2d 37 (1959) (dissent).

Before attempting to identify more precisely those policy considerations which I think should be controlling, let me first set forth the analysis which has led me to that conclusion.

Whether a note is taken in payment of an obligation, or as evidence thereof, is a question of fact. *Simmons v. Gardenspot Ranch, Inc.,* 68 Wn.2d 131, 411 P.2d 857 (1966);

*Vancouver Nat'l Bank v. Katz,* 142 Wash. 306, 252 P. 934 (1927). *See* R. Cosway, *Negotiable Instruments — A Comparison of Washington Law and UCC Article 3,* in The Uniform Commercial Code in Washington (1967). *Cf.* RCW 62A.3-802 (1965). As to this issue, the recital is no more than a recital of fact, which may be contradicted in parol. *See* 4 S. Williston, Contracts § 632 (3d ed. 1961); 3 A. Corbin, Contracts § 586 (1960). Having heard the evidence, the trial court resolved the facts adversely to the appellant.

The use of a promissory note given by a purchaser as the consideration to sustain an earnest money real estate contract appears to have become a common practice. Such a usage may be objectionable or unobjectionable depending upon the specific circumstances involved. A note so given shifts to the vendor the risk of an unsuccessful action upon the note to compel payment in event of nonperformance of the earnest money agreement by the vendee. There is no reason that a vendor cannot agree to take such a risk. But the factual circumstances of the transaction must be such that the recitals establishing receipt of the note as payment and consideration are true recitals. Such recitals may be questioned in parol.

The recital in the note that it was taken by the Fosters in payment *was found by the trial court to be false.* That finding was supported by substantial evidence, and this court should not disturb it. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

The trial court did not explicitly find that the appellants had made an enforceable promise to pay to the respondents $5,000 cash earnest money within 60 days or a reasonable time thereafter. Accordingly, *Seattle-First Nat'l Bank v. Pearson,* 63 Wn.2d 890, 389 P.2d 665 (1964),[2] should not be controlling. The trial court did find:

> Under the earnest money receipt and agreement and the statements made by Harold J. O'Brien, the defendants Foster understood that the plaintiff had sixty days to

[2]The *Pearson* case is severely questioned by Corbin. *See* 3 A. Corbin, Contracts § 589 n.64 (1960, Supp. 1964).

determine feasibility and also had sixty days within which to deposit earnest money . . .

That finding interprets the written agreement as a contract subject to a condition: namely, deposit of cash earnest money within 60 days. Whether the parol evidence rule as traditionally formulated would apply to proof of that condition depends upon the characterization applicable to it. Although the findings of fact do not explicitly characterize the condition, its nature is clarified in the trial court's oral opinion:

> I find the fact to be that that evening during the conversation they [the Fosters] were told that five thousand dollars would be put up within sixty days, and that the balance of the earnest money [*sic*] would be paid sometime later. The Fosters knew, in other words, that they were going to tie up their place for sixty days, but not until the end of that time would they know whether it was going to be purchased, or not until the end of that time would any real money be put up . . .

The condition is not precedent to existence of a contractual relation, for the trial court states that the Fosters were "tying up" their place. Nor is the condition subsequent to the contract, for the Fosters were under no duty to perform prior to the payment of the earnest money.

The condition is precedent to the duty of performance; *i.e.*, an internal condition precedent. As to whether such a condition is to be proven by parol evidence, the orthodox answer is: no. Our own rule is stated in an elusively simple manner: in Washington, a condition precedent to the existence of a contract may be shown by parol, but a condition "subsequent," which defeats the contractual duty, may not. *See City Nat'l Bank v. Molitor*, 63 Wn.2d 737, 388 P.2d 936 (1964), *and* Shattuck, *Contracts in Washington, 1937-1957*, 34 Wash. L. Rev. 24, Part II 382 (1959) (using the more traditional external/internal dichotomy); *but see* 3 A. Corbin, Contracts § 589 n.64 (1960, Supp. 1964). The distinction is not one which lends itself to easy application, or orders the course of business. *Compare Fleming v. August*, 48 Wn.2d 131, 291 P.2d 639 (1955) (promissory note conditioned on

event to take place after execution; conditional delivery found), *with Meyer v. Armstrong,* 49 Wn.2d 598, 304 P.2d 710 (1956) (promissory note conditioned on event to take place after execution; conditional delivery found at trial; reversed on appeal for inconsistency with note). Professor Corbin suggests that the distinction is inadequate to explain the results of the cases.[3]

Our precedents, discussed above, do not adequately set forth a rule. This phenomenon is not peculiar to this jurisdiction. See 3 A. Corbin, Contracts § 589 (1960). The jurisprudential problem is whether it is preferable to continue to decide cases as though there were one rigid standard, stretching that standard to accommodate hard cases, or whether it is preferable to attempt to set out the considerations of policy governing the extent to which parties to a transaction involving writings should be bound by those writings, thus inviting argument as to the considerations actually governing the disposition of cases.

In the classical form of the parol evidence rule, the court must first confront the factual question of integration. The rule has nothing to do with this question—one cannot bootstrap oneself into an integrated contract. *See* A. Corbin, *The Parol Evidence Rule,* 53 Yale L. J. 603, 627-33 (1944). If an integration is found, the court must consider if the parol is acceptable as proving a collateral agreement. As has been pointed out, cases on this issue are far from harmonious, and appear to reflect both the practical consideration of commercial reasonableness and an increasing liberality in the admission of parol. *See* S. Williston, Contracts § 638 (3d ed. 1961). The classical formulation of the collateral agreement test, once the agreement is established, has

---

[3] 3 A. Corbin, Contracts § 589, at 543-45 (1960).

Corbin's observation is exemplified by *Lempco Prods., Inc. v. Phillips,* 51 Wn.2d 334, 317 P.2d 1060 (1957), allowing proof as a parol external condition precedent to a contract of sale of a condition that the machine sold must perform satisfactorily on trial. Such tortured characterization indicates a certain elasticity in the rule as classically formulated.

been an inquiry into whether the parol proof was offered to contradict the written agreement.[4]

As a result of the above theory, the chief means of evasion of the parol evidence rule—barring defenses to the contract itself, such as fraud, duress, or illegality—have been to offer the parol as proof of an external condition precedent,[5] or as proof of a collateral agreement which did not contradict the writing.[6] As Williston's advice as to merger clauses has gained adherents,[7] the law of parol evidence has shown an increasing tendency to degenerate into a struggle between overreaching merchants or quasi-merchants and their unwary and unadvised victims.[8]

The rule, a policy of which has been said to have been the prevention of frauds, see S. Williston, Contracts § 632A (3d ed. 1961), has become as much a source of frauds as a bar to them. In seeking to preserve substantial justice between the parties, courts have imperiled the course of commercial dealings. Persons who engage as a business in contracting or commercial activity may be expected, and required at their peril, to be aware of the niceties of the parol evidence rule. Without the rule prohibiting parol, large scale commercial transactions would be rendered impossible. Similarly, the standard of commercial reasonableness

---

[4]Scholars criticize the formulation "vary or contradict" upon the analytic ground that *every* attempt to prove parol in a lawsuit "varies" the writing—otherwise the parol would not be offered. *See, e.g.,* S. Williston, Contracts § 639, p. 1049 (3d ed. 1961).

[5]*E.g., Meyer v. Armstrong, supra; Lemco Prods., Inc. v. Phillips, supra* note 2.

[6]*E.g., Black v. Evergreen Land Developers, Inc.,* 75 Wn.2d 241, 450 P.2d 470 (1969); *Becker v. Lagerquist Bros., Inc.,* 55 Wn.2d 425, 348 P.2d 423 (1960); *Buyken v. Ertner,* 33 Wn.2d 334, 205 P.2d 628 (1949).

[7]"If they provide in terms that the writing shall be a complete integration of their agreement . . . the expressed intention will be effectuated." 4 S. Williston, Contracts § 633 (3d ed. 1961).

3 A. Corbin, Contracts § 578 (1960) is considerably less dogmatic, noting that such a statement may always be attacked as either a fraud or a false recital of fact.

[8]*E.g., Black v. Evergreen Land Developers, Inc., supra* note 5; *Becker v. Lagerquist Bros., Inc., supra* note 5; *Shelton v. Fowler,* 69 Wn.2d 85, 417 P.2d 350 (1966).

governing collateral agreements of merchants, *see* RCW 62A.2-202, and persons comparable to merchants, may be safely set at a high level.

The progress from status to contract with respect to persons other than merchants has not been entirely fortunate in all respects. *See* A. Ehrenzweig, Conflicts § 172 (1962). The problem is to some extent remedied by UCC 2-302 (RCW 62A.2-302) as to the law of sales, by committing to the courts the policing of contracts for unconscionability. Yet in the area outside the scope of UCC 2-302 and the UCC concept of a merchant, casual sales continue to be ostensibly subject to the same rules as large scale commercial undertakings. In this area, justice for the average citizen is ostensibly governed by rules which have no substantial relation to the contracts which they fictitiously create.

The fault is not in the policy and substance of the parol evidence rule, but in its formal application. To those whose relations are predicated upon them, legal technicalities are a guarantee of exact dealing. There are therefore sound reasons of law and policy for adherence to the classical formulation of the parol evidence rule between merchants and those who customarily trade in a market in which the property in which they deal or services which they supply are bought, sold, or contracted for.

Such reasons do not exist in the situation where a casual seller or buyer deals with one who customarily buys and sells, on his own account or as agent for others, in the market in which the property exchanged is bought or sold.[9] In agreements between such parties, a merger clause, whether promissory or recitative in form, may always be challenged in parol.[10] As to such parties, there should be

---

[9] The reasoning here set forth may be equally applicable to one who contracts as a business with those whose purchases of services occur on a casual basis in a noncommercial context.

[10] Regardless of its form, such a clause may always be challenged as a false recital of fact. *See* note 6 *supra. See also Black v. Evergreen Land Developers, Inc., supra* note 5, and cases cited therein; A. Corbin, *The Parol Evidence Rule, supra* at 627-33. The clause is nevertheless evidence of integration, once the positions of the parties are considered. *See* the discussion of reliance factors in *Shelton v. Fowler,* 69 Wn.2d 85, 417 P.2d 350 (1966).

no formal analysis of conditions for the purpose of evasion of the classical formulation of the parol evidence rule by fortuitous circumstance and disingenuous characterization.

I believe that this court should forthrightly hold that the proof of conditions in parol between parties, either of which do not customarily trade in the market in which the property exchanged is bought and sold, is governed by the standard of commercial reasonableness, regardless of assertions as to integration.

It could be said that there will be an inherent difficulty in determining who is a party customarily trading in the market and who is a casual buyer. I believe this to be a specious objection. No such difficulty has arisen in the application of provisions of the Uniform Commercial Code, RCW 62A.2-104, defining "merchant" or in the application of the various rules of law which stem from that definition.

Attempts to show what is classically described as an integration accompanied by a condition in parol are not governed, as between parties, either of which do not customarily trade in the market in which the property exchanged is bought and sold, by the contradiction test.

The court should inquire if the condition asserted in parol was one which a party possessed of the experience in the market of a casual buyer or seller would have necessarily included in the agreement.[11] This inquiry could consider the purpose of the agreement with relation to the necessity of inclusion of the parol condition.[12]

Courts should consider the reasonableness, as between parties possessed of the market experience of the parties to the contract, of inclusion of the parol in the writing. The

[11]In view of the passive role which Howk played in the negotiations, his relationship with O'Brien, and his disclaimer of any knowledge or inquiry concerning the financial responsibility of Kreger or the Foundation, the Fosters are not chargeable with his knowledge and expertise. Howk was engaged to produce buyers, not to sell the property.

[12]Factors such as a desire to preserve negotiability have always been considered relevant, even under the contradiction test, *Fleming v. August, supra;* 3 A. Corbin, Contracts § 589, at 543 (1960).

parol is to be considered competent evidence unless it is manifestly unreasonable that it was omitted from the writing. Such parties would not be charged with the prescience of a judge gifted with hindsight, the knowledge of the lawyer they could have retained, or a duty to presume that all persons with whom they deal are habitual liars. They should be required to embody in a written agreement, which purports to be their contract, those matters which it would be manifestly unreasonable not to embody, and no others.[13]

As an example of what is a manifestly unreasonable omission, in most cases parties, regardless of their experience, would not omit an entirely separate and additional promissory duty from a contract. *See, e.g., Kinne v. Lampson,* 58 Wn.2d 563, 364 P.2d 510 (1961). On the other hand, it is conceivable, and in some cases even likely, that they would fail to include a condition which, if it does not occur, would merely leave the parties in status quo ante with a still executory contract.

This test of commercial reasonableness will also focus part of the inquiry on the relative experience of the parties.[14]

In this regard, *Seattle-First Nat'l Bank v. Pearson,* 63 Wn.2d 890, 389 P.2d 665 (1964), and *City Nat'l Bank v. Molitor,* 63 Wn.2d 737, 388 P.2d 936 (1964), should be restricted to the factual and commercial context in which they arose. It is quite clear that those cases express a sound policy in protecting the contractual security of creditors

---

[13]The determination of which matters should have been so embodied is in almost all cases a matter properly within the discretion of the trial court. See 9 J. Wigmore, Evidence § 2442 (3d ed. 1940).

[14]Traynor, C.J., in *Masterson v. Sine,* 68 Cal. 2d 222, 436 P.2d 561, 65 Cal. Rptr. 545 (1968), ably demonstrates some of the difficulties inherent in past judicial treatment of the parol evidence rule. He suggests a more realistic test, namely, whether parol evidence is indicative of an agreement such as might naturally have been made a separate agreement under the particular circumstances. This in essence is the test proposed herein. I have, however, included an additional objective means of evaluating some of the particular circumstances involved, to wit, the relative expertise of the parties to the agreement.

from attempts to defeat a pledge agreement, or defend upon a suit brought on a guaranty agreement, in parol. The analysis used has, however, been severely criticized. 3 A. Corbin, Contracts § 589 n.64 (1960, Supp. 1964).

In the instant case, the recital of payment was a false recital. Given the representations accompanying the recital, however, it was not manifestly unreasonable for the parties to omit the true agreement as to payment from the writing. Proof of that agreement in parol was therefore proper. The effect of that agreement was to condition the duty of the vendor to perform upon payment by the vendee of the earnest money within 60 days or a reasonable time thereafter. Payment not having been made within the terms of the condition, the contract would die stillborn.

Respondents' letter of rescission of January 11, 1966, terminated contractual relations for failure to pay the note, which was then some 37 days overdue. Respondents had allowed a reasonable time for performance.

Respondents had made several inquiries as to when they would be paid. The last of these was prior to Christmas 1965. The rescission of January 11, 1966, was clearly consistent with the trial court's finding that appellants had failed to perform within the time provided or a reasonable time thereafter. An issue of waiver would arise only upon the interpretation that respondents' conduct was inconsistent with the enforcement of the condition, an interpretation which is precluded by the findings and the evidence.

For the reasons indicated, I therefore concur in the result reached by the majority.