**The MONTANA POWER COMPANY,
Plaintiff-Appellant,**

v.

**PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY, WASHINGTON, a Municipal Corporation of the State of Washington; Public Utility District No. 1 of Chelan County, Washington, a Municipal Corporation of the State of Washington, et al., etc., Defendants-Appellees.**

No. 76–3047.

United States Court of Appeals,
Ninth Circuit.

Dec. 18, 1978.

Kendrick O. Smith (argued), Corette, Smith & Dean, Butte, Mont., for plaintiff-appellant.

David J. Dorsey (argued), of Davis, Arneil, Dorsey & Kight, Wenatchee, Wash., for defendants-appellees.

Before GOODWIN and WALLACE, Circuit Judges, and THOMPSON,* District Judge.

GORDON THOMPSON, Jr., District Judge:

Appellant Montana Power Co. (hereinafter "Montana") owns and operates the Kerr dam on the Flathead River located in northwestern Montana. The Kerr dam is located on the Flathead Reservation and as a result Montana must pay rent to the Confederated Salishe and Kootenai Tribes for the use of the land. In 1959 the Tribes sought readjustment of the then $238,375.00 per year rental by petitioning the Federal Power Commission for an increase. A hearing was held beginning October 28, 1965, which resulted in a determination that the rental should be increased to $850,000.00. On October 4, 1966, the Federal Power Commission (hereinafter "FPC") increased that figure to $950,000.00 retroactive to 1959 when the petition for increase was filed. The FPC denied a petition for rehearing but granted a stay on April 15, 1968, which remained in effect until July 20, 1972, approximately one month after the Supreme Court's final denial of *certiorari*.

Montana then took its case to the appellate courts, arguing that the FPC lacked jurisdiction and that the readjustment was clearly excessive in amount. Montana had an initial victory before a panel of the United States Court of Appeals for the District of Columbia Circuit, but the panel's decision was reversed upon rehearing *en*

* Honorable Gordon Thompson, Jr., United States District Judge, Southern District of California, sitting by designation.

*banc.* Further rehearing was denied by the Circuit Court, and the Supreme Court denied *certiorari.* The Circuit Court then approved the amount of the increase and the Supreme Court denied *certiorari* on that aspect of the case as well.

The appellees are three Public Utility Districts (hereinafter "PUDs") who own one or more hydroelectric projects downstream from the Kerr dam. Beginning in 1961 the PUDs entered into a coordination agreement with Montana in which it was agreed that the PUDs would compensate Montana for the benefits which the downstream projects derived from Montana's Kerr dam as required by § 10(f) of the Federal Power Act. The 1961–1962 and 1962–1963 agreements provided for a fixed dollar payment from the PUDs. In 1963 the parties agreed to a ten year coordination agreement, which was supplanted by a final, permanent agreement in 1964. Both the 1963 and 1964 agreements provide a formula for the calculation of the charge to each PUD. This formula is quite complex; it and the other payment provisions compose seven pages of each of the two agreements. The land rental owed by Montana to the Tribes is one component of the formula.

In water years 1963–1964, 1964–1965, and 1965–1966, water was stored and made available by Montana; the charges were calculated in accordance with the formula in the coordination agreements; and the charges were paid by the PUDs. These charges, however, were calculated on the basis of the $238,375.00 per year land rental rather than the $950,000.00 set by the FPC in 1966 and made retroactive to 1959. On September 1, 1966 Montana and the PUDs met to discuss the increased land rental. According to the affidavit of John C. Hauck, secretary of Montana in 1966 and present at the meeting, it was agreed in principle that the PUDs would be obligated to pay Montana's costs based on the Indian land rentals as determined by the FPC. However, shortly after this meeting each of the PUDs informed Montana by letter that it would not be responsible for any *retroactive* adjustment of charges. In September 1966, Montana added a caveat to its PUD bills covering possible retroactive adjustment due to increased Indian land rental payments.

After the FPC lifted its stay, Montana sent bills to the PUDs for payment of their share of the increased Indian land rental for water years 1963, 1964, and 1965. The PUDs' refusal to pay has resulted in the instant lawsuit. The complaint was filed on April 9, 1975. On June 23, 1976, the district court granted the PUDs' motion for summary judgment on two alternative grounds: (1) the agreements between Montana and the PUDs make no provision for retroactive adjustment; and (2) the action was barred by the statute of limitations.

Montana Power has appealed. Jurisdiction is provided by 28 U.S.C. § 1291. We affirm on the contractual interpretation ground without reaching the statute of limitations question.

The appellant relies on the inclusion of "land rentals and similar charges" in the cost computation formula for its contention that the agreements do include a provision that might be construed to allow for retroactive adjustment of PUD charges due to retroactive increases in Indian land rental. Appellant contends that this inclusion of Indian land rental in the cost computation formula gives rise to ambiguity on the question of retroactive adjustment. Appellant argues that it should have the opportunity to prove through evidence of certain subsequent acts and statements by the PUDs that it was the intent of the parties in 1964 to allow retroactive adjustment of charges should there be a retroactive adjustment of Montana's rental payment to the Tribes. *Stender v. Twin City Foods, Inc.,* 82 Wash.2d 250, 510 P.2d 221 (1973); *Henry v. Lind,* 76 Wash.2d 199, 455 P.2d 927 (1969). We cannot agree. The agreements are clear, complete, and comprehensive; therefore, they are not subject to interpretation based on such extrinsic evidence.

**1022**

*Green River Foundation v. Foster,* 78 Wash.2d 245, 473 P.2d 844 (1970).[1]

█ The district court correctly found that there is no explicit provision in either the 1963 or 1964 coordination agreements for retroactive adjustment of charges to the PUDs.[2] Our review of these agreements has further convinced us that the mere mention of Indian land rental as a component of the cost computation formula cannot reasonably be read to provide for retroactive adjustment of charges. The parties' dispute is not whether the Indian land rental is a component of the charges to the PUDs, but rather whether those charges can be increased, subsequent to payment, to reflect retroactive increases in Indian land rental ordered by the FPC. Thus, the key contractual provisions to resolution of this dispute are those setting forth the procedure on payments, effect of payments, billing, and changes in charges. In these key contractual provisions, the agreements clearly make no provision for the retroactive adjustment attempted by appellant.

Both the 1963 and 1964 agreements provide that the PUDs shall make " . . . twelve (12) equal monthly payments due and payable on or before the fifteenth day of each month . . . ."[3] They further provide that billing shall be monthly and payable within ten days.[4] They then state that the effect of payment shall be " . . . full satisfaction as between the parties of all obligations under Section 10(f) of the Federal Power Act for the period covered by this agreement."[5] Additionally, the 1964 agreement includes a procedure for effecting changes in charges by either party. Such explicitness on the procedure and effect of payment and the procedure for review and change of charges leaves no room for interpretation by extrinsic evidence.

The district court was correct in concluding both that the agreements do not provide for retroactive adjustment and that there was no genuine issue of material fact precluding an award of summary judgment. It being unnecessary we do not reach the alternative statute of limitations ground relied on by the district court. AFFIRMED.

---

1. There apparently was no consideration in the district court of whether Washington or Montana law would apply to this case. When queried at oral argument as to which law we should apply in deciding this appeal, counsel for appellees replied that they believed Washington law would be governing; appellant's counsel took no position stating that he thought whichever state law was applied the outcome would not be affected. Due to the absence of a decision by the district court, the failure of the parties to even raise the choice of law issue, and the equivalent of a waiver of the issue by appellant's counsel, we will assume appellees are correct and apply Washington law.

2. It is noteworthy that the Indian request for increased land rental was pending at the time these agreements were negotiated and signed.

3. Section 13(c) of the 1963 agreement and § 13(d) of the 1964 agreement.

4. Section 14(h) of the 1963 agreement and § 14(i) of the 1964 agreement.

5. Section 13(e) of the 1963 agreement and § 13(g) of the 1964 agreement. Section 10(f) of the Federal Power Act, 16 U.S.C. § 803(f), sets forth the requirement that downstream utilities pay an "equitable" amount to the headwater improvement owner.